**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| FRANK CHAMBERLAIN, | : | Civ. Action No. 05-2102(NLH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| LENOX INCORPORATED, | : | |
| BROWN FORMAN CORP., and | : | |
| JOHN DOES 1-10, | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Keith T. Smith, Esquire
Ridgewood Plaza
2327 New Road
Suite 202
Northfield, NJ 08234

    *Attorney for Plaintiff*

Peter R. Freed, Esquire
Thomas Evan Hastings, Esquire
Steven Cantarutti, Esquire
Smith, Stratton, Wise, Heher & Brennan, LLP
2 Research Way
Princeton, NJ 08540

    *Attorneys for Defendant Lenox Incorporated*

**HILLMAN**, District Judge

    This matter has come before the Court on Defendant Lenox, Incorporated's motion for summary judgment on Plaintiff's claims that Defendant breached the terms of their agreement concerning Plaintiff's severance from employment with Defendant.  For the reasons expressed below and during oral argument held on January 30, 2007, Defendant's motion will be granted.

## BACKGROUND

Plaintiff, Frank Chamberlain, was employed with Defendant, Lenox, Incorporated, from December 1963 until October 3, 2003, when he was terminated from employment at age 58.[1]  In a meeting on October 3 with Lenox Vice President of Human Resources, Karen Sloan, and Plant Manager, Boyce Falls, Chamberlain was offered certain compensation and benefits relative to his separation from employment in consideration of Chamberlain signing a release agreement.  Chamberlain believed that he was being offered an early retirement package.

The meeting was followed by a letter dated the same day from Sloan to Chamberlain that described his compensation and benefits, and included the release agreement for his review.  The letter indicated that in addition to the standard termination entitlements such as payment for unused vacation, Chamberlain would also receive six months of severance pay and continued medical coverage for six months if he signed the attached release.  The letter also stated that he would receive complete benefit information in about two weeks.

The release agreement provided for a twenty-one day period in which to review and consider the agreement, as well as a seven day period in which to revoke the agreement after signature by

---

[1]Chamberlain disputes the reasons for his termination.  The reasons for Chamberlain's termination are not relevant to the resolution of Lenox's motion.

both parties.  The release agreement also encouraged Chamberlain
to consult an attorney prior to signing the agreement.  Following
Lenox's advice, Chamberlain consulted with an attorney.  His
attorney contacted Sloan, who indicated that Lenox would not
penalize Chamberlain in his receipt of retirement benefits if he
accepted the terms of the settlement.  Chamberlain signed the
agreement on October 17, 2003.

On October 28, 2003, Chamberlain received the additional
benefits information referenced in the October 3, 2003 letter
from Sloan.  The additional benefits letter explained his pension
benefits under the Lenox retirement plan, and stated that if
Chamberlain began to collect his pension in 2010 at age 65, he
would receive his full benefits of $1,056.10.  The letter
informed Chamberlain that if he began to receive his benefits
before age 65, his payments would be reduced by three percent
each year.  Chamberlain was also informed that he could begin
collecting his pension as of November 1, 2003 with the reduced
payments of $839.60.  The letter instructed Chamberlain that he
would have to apply for benefits at least three months prior to
the date he wanted his pension to begin.

Two days later, on October 30, 2003, Katherine M. Corr,
Senior Vice President of Lenox, signed the release agreement.
Neither Chamberlain nor Lenox revoked the agreement in the seven
days following Lenox's signature.

On December 8, 2003, Chamberlain contacted Lenox and asked for a calculation of what his pension benefits would be as of April 1, 2004, which is when his six month severance payments would end.  In a letter dated December 9, 2003 from Lenox, Chamberlain was provided with various payment amounts depending on payment terms.  Because Chamberlain wished to collect his pension benefits prior to age 65, he was assessed a penalty.  On January 2, 2004, Chamberlain chose the "Life, 10-Year Certain" benefit of $816.13 per month.  He received a lump sum payment of his entire pension of $45,303.21 on February 3, 2004.

On April 21, 2005, Chamberlain filed a Complaint against Lenox, claiming that it breached their agreement by charging him with an early retirement penalty when he collected his pension. Lenox has moved for summary judgment on Chamberlain's claim.

<u>**DISCUSSION**</u>

**A.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such

4

that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.    Analysis**

In order to prevail on a breach of contract claim, Chamberlain must prove that a valid contract existed, Lenox materially breached the contract, and Chamberlain suffered damages as a result of the breach.  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 421 F. Supp. 2d 831, 833 (D.N.J. 2006) (citing Coyle v. Englander's, 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985)).  To show that a valid contract existed, Chamberlain must show mutual assent, consideration, legality of the object of the contract, capacity of the parties and formulation of memorialization.  Id. (citing Cohn v. Fisher, 287 A.2d 222 (N.J. Super. Ct. Law Div. 1972)).  Thus, the dispositive issue before the Court is whether the agreement between the parties contained a waiver of the early retirement penalty, and if so, whether Lenox breached that provision.

**1.    Chamberlain's position**

Chamberlain claims that during the October 3, 2003 meeting, he was told by Falls that he was going to receive an "early retirement package" if he signed a release and agreement relinquishing his rights to sue for any claims arising out of his termination.  Chamberlain claims that by being told he was going to receive an early retirement package, he would not be assessed the three percent penalty if he chose to collect his pension prior to age 65.  His interpretation of the no penalty early

6

retirement package was based on former Lenox employees who
recently had received early retirement packages that specifically
eliminated the penalty.  Chamberlain also claims that when he
asked Sloan whether he could collect his pension benefits, she
said he could do so at any time.  Further, when Chamberlain's
attorney contacted Sloan during the twenty-one day review period,
Sloan told his attorney that he would not be penalized in his
retirement if he accepted the terms of the settlement.

Chamberlain argues that summary judgment must be denied
because the agreement is ambiguous and must be strictly construed
against the drafter, Lenox.  Chamberlain also argues that an
issue of material fact exists as to whether he made a knowing and
intelligent waiver of his pension rights.[2]

### 2.   Lenox's position

Lenox claims that the elimination of the early payment
penalty was not part of their agreement.  Lenox argues that the
release agreement, the October 3, 2003 letter and the October 28,
2003 letter regarding additional benefits information, which is
integrated by the October 3 letter, clearly and wholly define all
the terms of their agreement, and no where does it state that if
he avails himself of his pension benefits prior to age 65, the

---

[2]Chamberlain also argues that summary judgment should be
denied because an issue of material fact exists as to whether he
was fraudulently induced to enter into the contract.  Because
Chamberlain has only asserted a breach of contract claim in his
Complaint, this argument cannot be considered.

penalty would be waived.  Further, any statement by Lenox
employees that he would not be penalized referred to the fact
that Chamberlain's retirement benefits were not affected by the
release agreement, and that his benefits were just the same as
any other retiring Lenox employee.  Additionally, with regard to
the early retirement packages provided to other Lenox employees
that Chamberlain relies upon for his definition of his severance
benefits, Lenox claims that it was offered for a limited time in
October and November 1999, four years prior to Chamberlain's
departure, and completely inapplicable to him.

Lenox argues that summary judgment should be granted because
the release agreement, which contains a merger clause, does not
contain any provision for a waiver of the early retirement
penalty.  Because the contract between the parties did not
contain such a waiver, Lenox cannot be held to have breached the
contract by not waiving the penalty.

### 3.   Whether the agreement between the parties contained a waiver of the early retirement penalty

Lenox's argument cannot stand alone to support the grant of
summary judgment.  Even though the release agreement contains a
merger clause--stating that "This is the entire Agreement between
the Company and me"--the release agreement cannot be considered
the entire contract because it does not contain the terms of
Chamberlain's additional benefits of six months of severance pay
and six months of medical coverage, which is the consideration

8

for him signing the release agreement. Thus, the October 3, 2003 letter, which contains the specific terms of Chamberlain's additional benefits, and the October 28, 2003 letter referenced in the October 3, 2003 letter, must also be considered part of the contract. This contract, however, consisting of three documents, one containing a merger clause that does not contain all the material elements of the contract, and another incorporating as part of the contract future correspondence, cannot in itself form a sufficient basis for summary judgment.

Two facts also weigh against summary judgment. Considering that Chamberlain's evidence is to be believed and all justifiable inferences are to be drawn in his favor, the statements by Sloan to Chamberlain and his attorney that he would not be penalized for taking his pension early, coupled with Chamberlain's belief that Falls called his severance agreement and "early retirement package," both indicate that a material issue of fact may exist as to the terms of the contract.

Chamberlain's own conduct, however, requires that summary judgment must be granted. First, Chamberlain has never contended that Lenox specifically told him that the early retirement penalty was waived, and it is not disputed that the written documents do not contain a provision for such a wavier. Rather, Chamberlain surmised that his severance was an "early retirement package" which contained the same penalty waiver as the early

retirement packages offered to two employees four years earlier.

Second, even assuming as true that Chamberlain's severance agreement was an "early retirement package," his conduct following the October 3, 2003 meeting is inconsistent with his subjective belief of what the terms of the early retirement package were.  The October 3, 2003 letter and attached agreement did not contain any provision for a waiver of the early retirement penalty.  Despite the absence of the specific waiver, Chamberlain signed the agreement on October 17, 2003, evidently because he still believed that the penalty was waived.  Then, on October 28, 2003, Chamberlain received a letter regarding his pension benefits that specifically spelled out the amount of his payment if he were to start collecting as of November 1, 2003, and if he waited to start collecting until age 65.  The letter also specifically explained the penalty provision.  When Chamberlain received this letter, if it was not prior to Lenox's October 30, 2003 execution of the agreement, it was certainly within the seven-day revocation period.  No reasonable jury could conclude that after the absence of the waiver in the written agreement, and a detailed letter explaining his pension benefits and the effect of applying for his pension benefits early, he still believed that the waiver was part of his settlement.

Chamberlain's conduct following the execution of the agreement further demonstrates that it is inconsistent with his

10

subjective belief of the terms of their agreement.  In December 2003, he asked for and received from Lenox a detailed break down of his pension benefits to start in April, 2004, when his six month severance payments would stop.  This breakdown in December, 2003 explicitly applied the early retirement penalty.  Then, a month later, on January 2, 2004, Chamberlain chose the "Life, 10-Year Certain" benefit of $816.13 per month, and a month after that, he received a lump sum payment of his entire pension of $45,303.21 on February 3, 2004.  It was not until a year later that he filed suit against Lenox claiming that they applied the early retirement penalty in breach of their agreement.

Within a few weeks after his October 3, 2003 termination meeting, Chamberlain was alerted to the fact that Lenox was not operating under the same belief that the early retirement penalty was waived.  Chamberlain, however, did not seek to rescind the contact and instead accepted the benefits of the contract for six months.  He also inquired about, applied for, and accepted his reduced pension.

This case, at most, presents a possible claim of unilateral mistake.  The remedy for a unilateral mistake, however, is rescission of the contract, rather than the enforcement the contract.  See Fleming Companies, Inc. v. Thriftway Medford Lakes, Inc., 913 F. Supp. 837, 843 (D.N.J. 1995).  If Chamberlain were to claim unilateral mistake, he would have to repay Lenox

11

for his six months of severance pay and medical coverage. Instead, Chamberlain is seeking to enforce a term in the contract that the evidence in the record and Chamberlain's own conduct does not support existed.  As the Supreme Court aptly stated many years ago in an analogous breach of contract case, "[W]hen a party discovers that he has been deceived in a transaction . . . he may resort to an action at law to recover damages, or he may have the transaction set aside in which he has been wronged by the rescission of the contract. If he chooses the latter remedy, he must act promptly, 'announce his purpose and adhere to it,' and not by acts of ownership continue to assert right and title over the property as though it belonged to him." Shappirio v. Goldberg, 192 U.S. 232, 242-43 (1904).  Instead, by continuing to receive the fruits of an allegedly flawed contract,  that "conduct is wholly inconsistent with an election to undo the transaction and stand upon his right to rescind the contract." Id. at 243.

    Here, Chamberlain's conduct is "wholly inconsistent" with his claim that the waiver of the early retirement penalty was a mutually agreed upon term of the contract.  Consequently, Lenox's motion for summary judgment must be granted.  An appropriate Order will be entered.

Dated: April 2, 2007                    s/ Noel L. Hillman

At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.